IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EASYKNOCK, INC. and EK REAL ESTATE SERVICES OF NY, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>FELDMAN & FELDMAN, P.C.; CRISTEN D. FELDMAN, INDIVIDUALLY; and DAVID M. FELDMAN, INDIVIDUALLY,<br><br>*Defendants*. | CIVIL ACTION NO.:<br><br>_____<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' COMPLAINT AND APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER,[1] PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTIVE RELIEF**

Plaintiffs EasyKnock, Inc. and EK Real Estate Services of NY, LLC ("EK Real Estate") (together EasyKnock, Inc. and EK Real Estate are referred to "EasyKnock" or "Plaintiffs") complain of Defendants Feldman & Feldman, P.C.; Cristen D. Feldman, individually; and David M. Feldman, individually, and respectfully would show the Court as follows:

---

[1] Plaintiffs' Application for *Ex Parte* Temporary Restraining Order is supported by the Declaration of Barry Feierstein (executed 11/5/21), attached as **Exhibit A** to this Complaint, and the Certification of Christopher B. Trowbridge, attorney-in-charge for Plaintiffs, found at the end of this Complaint.

## INTRODUCTION

1.      This case is about a law firm that has stooped to shocking levels of deceit

and predation to solicit business. Defendants Feldman & Feldman, a law firm, and its

named partners, Cristen D. Feldman and David M. Feldman, are engaged in a campaign

of barratry to lure customers of EK Real Estate through misrepresentations, false

promises, and defamation of EasyKnock to engage with Defendants and file frivolous

lawsuits against EasyKnock. In this action, EasyKnock seeks damages and injunctive

relief to stem the reputational harm, loss of goodwill, and contractual interference

Defendants are causing by: (a) sending uninvited solicitation letters to EK Real Estate's

customers; and (b) publishing misrepresentations and defamatory statements about

EasyKnock to the world on Defendants' website.

## PARTIES

2.      Plaintiff EasyKnock, Inc. is a Delaware corporation.

3.      Plaintiff EK Real Estate Services of NY, LLC is a New York limited liability

company authorized to operate in the state of Texas. EK Real Estate's only member is

EasyKnock, Inc., which is incorporated under the laws of the state of Delaware with its

principal place of business in New York.

4.      Defendant Feldman & Feldman, P.C. is a Texas professional corporation,

with an office in Harris County, Texas, and may be served with process through its

registered agent David M. Feldman at 15 E. Greenway, #24G, 3355 West Alabama, Suite 1220, Houston, Texas 77098, or wherever he may be found.

5.      Defendant Cristen D. Feldman is an individual residing, on information and belief, in Harris County, Texas and may be served with process at his principal place of business at 3355 West Alabama, Suite 1220, Houston, Texas 77098, or wherever he may be found.

6.      Defendant David M. Feldman is an individual residing, on information and belief, in Harris County, Texas and may be served with process at his principal place of business at 3355 West Alabama, Suite 1220, Houston, Texas 77098, or wherever he may be found.

## JURISDICTION

7.      The Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of New York, Defendants are citizens of Texas, and the amount in controversy exceeds $75,000, excluding interest and costs.

## VENUE

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (c)(1), and (c)(2) because Defendants Cristen D. Feldman and David M. Feldman are, upon information and belief, domiciled in the Southern District of Texas and Defendant Feldman & Feldman, P.C. is subject to personal jurisdiction in the Southern District of Texas.

9.     Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to EasyKnock's claims occurred in the Southern District of Texas.

## FACTUAL BACKGROUND

**A.     EasyKnock's Innovative, Customer-driven Sale-Leaseback Business Model.**

10.     Founded in 2016, EasyKnock helps middle-class homeowners by offering them a path to financial flexibility and long-term home security. Customers gravitate to EasyKnock's platform because it combines (a) access to financial freedom necessary to pursue long-term goals, such as buying a new home, paying off debt, or starting a business, with (b) the security to remain living in the home after EasyKnock purchases the home while retaining control over financial decisions concerning the home.

11.     EasyKnock centers its business on its proprietary "Sell and Stay" sale-leaseback program. The Sell and Stay program allows a homeowner to sell their home to EK Real Estate at a market price, and lease the home back at a market rate as a tenant of EK Real Estate. Uniquely, tenants of EK Real Estate have an unqualified option to either: (a) repurchase their home at a fixed, previously agreed upon price; or (b) request EK Real Estate to sell the home based on its market value.[2]

---

[2] Upon a sale, EK Real Estate tenants receive the proceeds from the sale, less amounts already paid by EK Real Estate to the tenant in connection with the EK Real Estate's purchase of the home, along with certain other fees and costs.

12.     Sell and Stay transactions involve specific industry-standard and regulatory-compliant real estate agreements and documents, including:

    a.     A real estate purchase and sale agreement ("Purchase Agreement");

    b.     A lease agreement ("Lease");

    c.     An option contract allowing the tenant to repurchase the home or request EK Real Estate to sell the home ("Option"); and

    d.     A risk factors disclosure ("Risk Disclosure").

13.     The Risk Disclosure describes in plain English the risk associated with the sale-leaseback transaction and makes explicitly clear that:

    a.     The customer is selling the home and will no longer own it;

    b.     EK Real Estate is purchasing the home and will become the new owner; and

    c.     The customer will become a tenant under a lease with EK Real Estate.

14.     EK Real Estate and its customers review and execute each of these agreements and documents at a formal closing process.

15.     Operationally, EasyKnock's practices rely on a host of customer-driven principles that EasyKnock designed to provide protection and security to its customers, including those outlined below.

    a.     **Fair-Market Purchase Price:** EasyKnock determines the purchase offer for a home based on market value as determined by using third-party appraisals as a guide.

b.  **Fair-Market Rent:** EK Real Estate charges leaseback tenants market-rate rent and performs due diligence with customers to ensure that they have the cash flow to make rent payments successfully. EasyKnock obtains the market-rate rent from third-party information for similar homes in the region.

c.  **Customer Control:** EasyKnock always empowers its customers to control the next step that makes sense for their personal situation, whether that is remaining as a tenant; repurchasing the home; or requesting EK Real Estate sell the home. EK Real Estate allows customers to exit their leases at any time, for any reason, at no cost or penalty.

d.  **Eviction Avoidance:** EasyKnock uses a number of strategies to avoid eviction with tenants, when possible, through a variety of customer-first resolution methods.

16.     EasyKnock is not a lender; does not loan money or provide any type of financing to customers; has never entered any type of loan transaction with a customer; and is not regulated or governed by any state or federal lending regulation, statute, or other law.

**B.    Defendants Have Tortiously Solicited and Interfered with EasyKnock's Customers Through a Campaign of Misinformation and Defamation.**

17.     Defendant Feldman & Feldman is law firm based in Houston, Texas. Defendants David M. Feldman and Cristen D. Feldman are the named partners of Feldman & Feldman.

18.     Beginning as early as August 26, 2021, Defendants began soliciting business by sending uninvited letters to tenants of EK Real Estate, written to wrongfully convince the tenants to pursue legal action against EasyKnock. Upon information and belief,

Defendants obtained the specific names and addresses of the tenants by accessing property records to determine who had sold properties to EK Real Estate.

19.     The URL of Defendants' website is displayed front and center on these solicitation letters. Defendants litter their website with misinformation and false, defamatory statements about EasyKnock, the nature of its business model, and its business practices. Specifically, in a web post dated July 27, 2021, Defendants published a litany of purported assertions of fact that defame EasyKnock, mislead its customers and Defendants' potential clients, and interfere with EK Real Estate's contractual relations.[3] The following chart juxtaposes examples of Defendants' libelous statements with EasyKnock's actual business activities.

| DEFENDANTS' WEBSITE ASSERTIONS | EASYKNOCK'S ACTUAL BUSINESS ACTIVITIES |
|---|---|
| "Feldman & Feldman … is investigating … the unauthorized, predatory lending tactics of EasyKnock[]." | EasyKnock is not a lender; and has never entered a loan or financing transaction of any type with a customer.<br><br>EasyKnock's disclosures to customers represent in plain English that EasyKnock is not a lender and is not offering to extend credit or engage in any type of loan transaction.<br><br>The transactional documents that comprise an EasyKnock Sell-and-Stay transaction include a Purchase Agreement, a wholly separate Lease, and |

---

[3] *See* Real Estate Fraud Lawsuit Against EasyKnock, Inc. and EK Real Estate Services of NY, LLC (last visited Oct. 27, 2021), https://feldman.law/news/real-estate-fraud-lawsuit-against-easyknock-inc-and-ek-real-estate-services-of-ny-llc/.

| | Risk Disclosures that make clear what the transaction is a sale-leaseback and is not a loan. |
|---|---|
| "[EasyKnock has] engaged in patently false and misleading practices designed to induce Texas homeowners into highly suspect agreements jeopardizing the ownership of their constitutionally protected homestead." | EasyKnock premises the very nature of its business model on a fair-market purchase of an individual's home that results in a bargained-for transfer of ownership. The point: both sides to the transaction know and intend for ownership and title to transfer to EasyKnock. |
| "[EasyKnock] regularly extend[s] or offer[s] to extend consumer credit for which a finance charge may be imposed or which by written agreement, is payable in more than four installments, making them a creditor within the meaning of the Truth in Lending Act, 15 U.S.C. §1602(g) and Regulation Z §226.2(a)(17). | EasyKnock is not a lender and is not governed or regulated by the lending statutes and regulations cited by Defendants. EasyKnock does not: refinance its customers' homes; extend consumer credit; impose finance charges; or enter written agreements payable in four installments. |
| "[EasyKnock has] skirted basic disclosure requirements that would often protect consumers from unscrupulous loans. | EasyKnock's disclosure process complies fully with all applicable laws concerning the sale and lease of residential homes in Texas. Further, EasyKnock vigorously adheres to and updates a strict compliance program in all states in which it operates.<br><br>EasyKnock does not make loans at all, much less unscrupulous loans. |
| "Before entering into these transactions, lenders like [EasyKnock] have an obligation to be sure that residential homeowners meet the minimum standards for residential mortgages, including the ability to repay." | EasyKnock is not, and has never been, a lender.<br><br>EasyKnock does not offer or transact residential mortgages, nor does it hold itself out to be a residential mortgage lender or broker. |

| | |
|---|---|
| "Residential mortgage lenders like [EasyKnock] also attempt to place arbitration agreements in their contracts. Arbitration agreements are strictly prohibited by the Truth in Lending Act." | EasyKnock is not a mortgage lender, and therefore the Truth in Lending Act does not govern EasyKnock. |
| "EasyKnock" do[es] not provide the homeowners a Truth In Lending Disclosure Statement, nor do these entities ensure that residential homeowners meet required minimum lending standards, and as a result, violate the requirements of the Truth In Lending Act in [various] ways … ." | EasyKnock is not a lender, and is therefore not governed by the Truth in Lending Act or required to provide homeowners with a Truth in Lending Disclosure Statement.<br><br>Regardless, Defendants have: (a) never taken the time to review EasyKnock's robust disclosures, customer bill of rights, and other customer-protection notices; (b) is consciously misleading the public; or (c) yet worse, both. |
| "Feldman & Feldman is pursuing litigation … against unscrupulous out of state lenders such as EasyKnock[] … ." | Defendants' spurious characterization of EasyKnock as "unscrupulous" is defamatory in its own right. Its choice to label EasyKnock as an "out of state lender" is verifiably false and misleading. |

20.     The egregiousness of Defendants' defamation is compounded by the fact that their aim in publishing these statements was, and remains, at least three-fold:

a.      Realize pecuniary gain from their defamatory solicitations by engaging clients who are tenants of EK Real Estate;

b.      Injure EasyKnock's reputation and profitability; and

c.      Cause EK Real Estate's tenants to breach their lease agreements with EK Real Estate by ceasing to make rental payments to EK Real Estate and attempting to void their agreements with EK Real Estate.

21.     Defendants' defamatory claims and solicitations—targeted directly at EK Real Estate's tenants through the solicitation letters and made available to the world on Defendants' website—have caused EasyKnock substantial, irreparable harm.

22.     Further, Defendants' primary and ultimate goal through their false and misleading solicitation letters and defamatory website is simple: commercial gain. Defendants want tenants of EK Real Estate to engage with Defendants and take legal action against EasyKnock in the hope that Defendants will then get a sizeable share of settlements or judgments. Indeed, Defendants makes their commercial intentions clear on their website:

> If you or someone you know entered into an agreement with EasyKnock, Inc. and/or EK Real Estate Services of NY, LLC, please contact us so that we can review your situation to determine if you have a potential case against these lenders.[4]

In doing so, Defendants are knowingly aiding, assisting, and encouraging tenants of EK Real Estate to void and breach their contracts with EK Real Estate, thereby knowingly interfering with EK Real Estate's contractual and business relationships.

23.     Defendants' solicitation of clients through their letter campaign and the publishing of misrepresentations and false, misleading statements about EasyKnock also

---

[4] See Real Estate Fraud Lawsuit Against EasyKnock, Inc. and EK Real Estate Services of NY, LLC (last visited Oct. 27, 2021), https://feldman.law/news/real-estate-fraud-lawsuit-against-easyknock-inc-and-ek-real-estate-services-of-ny-llc/.

amounts to barratry, for which EK Real Estate tenants have a civil right of action to recover damages and seek other relief.

24.     On October 28, 2021, EasyKnock, through counsel, sent Defendants a written demand to: (a) cease and desist from, among other things, further defamation and disparagement of EasyKnock; and (b) retract the libelous statements published on Defendants' website. Defendants have failed and refused to retract their libel and therefore remain committed to using the false, misleading, and defamatory content on their commercial website to tarnish EasyKnock's reputation, goodwill, and customer relationships. As of the date of this filing, Defendants have failed to respond to EasyKnock's cease and desist letter or remove the defamatory statements from their website.

## COUNTS

### A.     Count One – Defamation

25.     EasyKnock incorporates the paragraphs above.

26.     Defendants have intentionally published false, disparaging statements on their website about EasyKnock, its business model, its interactions with its customers, and its compliance with the law. Defendants have published these statements to the world on Defendants' website and more directly to EasyKnock's customers through solicitation letters Defendants have mailed directly to EasyKnock's tenants.

27.     Defendants published these false, defamatory statements and representations: (a) without privilege or regard for their truth or falsity; and (b) with malice.

28.     Defendants' defamatory statements and representations have caused EasyKnock to suffer pecuniary and non-pecuniary injuries, including loss of reputation, loss of goodwill, and loss of profits.

29.     Defendants' defamation entitles EasyKnock to the injunctive relief described below.

**B.     Count Two – Tortious Interference**

30.     EK Real Estate incorporates the paragraphs above.

31.     EK Real Estate has valid Purchase Agreements, Leases, and ongoing business relationships with tenants in Texas and across the United States.

32.     Defendants know tenants of EK Real Estate located in Texas executed Purchase Agreements and Leases with EK Real Estate and have ongoing business relationships with EK Real Estate. Defendants have aided, encouraged, and assisted tenants of EasyKnock to breach their contractual obligations to EK Real Estate by, among other things, ceasing to make rental payments to EasyKnock and seeking to void their Leases.

33.     Defendants' conduct has been willful and intentional, without a legal right or privilege, and designed to interfere with EK Real Estate's contractual and business

relations with tenants of EK Real Estate. Defendants' interference proximately caused injury to EK Real Estate.

34.     Defendants' tortious interference entitles EK Real Estate to the injunctive relief described below.

## APPLICATION FOR INJUNCTIVE RELIEF

35.     EasyKnock incorporates the paragraphs above.

36.     The defamatory content on Defendants' website is freely available to the general public, including customers and potential customers of EasyKnock. Making matters worse, Defendants are directly targeting customers and tenants of EK Real Estate with solicitation letters that emphasize Defendants' defamatory website. Through their defamatory solicitations and website, Defendants have succeeded in interfering with EK Real Estate's contractual and ongoing business relationships with its tenants.

37.     Accordingly, EasyKnock seeks injunctive relief requiring Defendants to retract and remove the defamatory statements from their website and to cease and desist from interfering with EK Real Estate's contractual and business relationships. If not enjoined, Defendants' actions pose an immediate threat of irreparable harm and injury to EasyKnock in harm to EasyKnock's reputation, goodwill, and customer relationships that monetary damages alone cannot undo.

**A.     EasyKnock Has a Substantial Likelihood of Success on the Merits.**

38.     EasyKnock incorporates the paragraphs above.

39.     EasyKnock has established its entitlement to preliminary injunctive relief. First, EasyKnock has established a substantial likelihood of success on the merits of its valid claims against Defendants for defamation and tortious interference. Defendants have published verifiably false, disparaging statements on their website to solicit business opportunities and harm EasyKnock's business. Through misinformation and deception, Defendants have also aided, assisted, and encouraged customers of EK Real Estate to breach their agreements with EasyKnock by, among other things, ceasing to make rental payments to EK Real Estate and seeking to void their Leases.

**B.     Defendants' Conduct Presents a Substantial Threat of Irreparable Injury.**

40.     EasyKnock incorporates the paragraphs above.

41.     Second, EasyKnock has established a substantial threat that it will suffer irreparable injury without injunction. With each passing day, Defendants' false, disparaging misrepresentations remain freely available to the world and directly target EK Real Estate's tenants. The potential losses of customers, goodwill, and business disruptions and the toll on EasyKnock's reputation, which will inevitably occur if Defendants are not enjoined, will irreparably injure EasyKnock such that the injury cannot be measured in monetary terms. EasyKnock has no adequate remedy at law without the injunctive relief sought through this action.

**C.     The Threatened Injury to EasyKnock Outweighs Any Harm to Defendants.**

42.     EasyKnock incorporates the paragraphs above.

43.     Third, EasyKnock has established that the threatened injury to EasyKnock far outweighs any alleged harm to Defendants. It does not constitute harm to require Defendants to remove false and deceptive material from their website and cease distribution of false and deceptive material through direct mail to EK Real Estate's customers. Attorneys across Texas engage in advertising efforts that do not require defamation and tortious interference. There are myriad ways Defendants can advertise their legal services that do not involve direct assaults against EasyKnock through misrepresentation and falsehood. The Court's injunction would merely prohibit Defendants from using the illicit solicitation methods they have chosen.

## D.     Injunctive Relief Will Not Disservice the Public.

44.     EasyKnock incorporates the paragraphs above.

45.     Fourth, EasyKnock has established that granting injunctive relief will not disservice the public. In contrast, by precluding Defendants from publishing false and disparaging material, the Court's injunction will serve the public's interest by removing from public discourse deceptive allegations that can only serve to mislead or confuse.

## E.     EasyKnock Is Entitled to an *Ex Parte* Temporary Restraining Order.

46.     EasyKnock incorporates the paragraphs above.

47.     Finally, EasyKnock has established it is entitled to an *ex parte* temporary restraining order. As proven by the declaration of Barry Feierstein, chief operating officer of EasyKnock, EasyKnock will suffer immediate and irreparable injury if a temporary

restraining order is not granted before Defendants can be heard. Each passing day, Defendants' deceptive and confusing communications mislead more of EK Real Estate's tenants and customers into attempting to breach or void their Leases with EK Real Estate. Each passing day, more potential customers will likely view Defendants' disparaging and untrue comments published on Defendants' website, resulting in lost potential business to EasyKnock. Each passing day, Defendants' defamation and interference will continue to cause increasing and expanding harm to EasyKnock's reputation. Accordingly, EasyKnock requests the Court enjoin Defendants' harmful acts immediately, without notice to Defendants. Under Rule 65 of the Federal Rules of Civil Procedure, EasyKnock's counsel of record certifies this request for *ex parte* temporary restraining order.

48.     To preserve the status quo and rights of EasyKnock during the pendency of this action, EasyKnock respectfully requests the Court temporarily restrain Defendants from defaming EasyKnock and interfering with EK Real Estate's contractual and business relationships. EasyKnock also seeks a preliminary and permanent injunction against Defendants, requiring them to retract and remove the defamatory content from their website and enjoining them from interfering with EK Real Estate's contractual and business relationships.

## CONDITIONS PRECEDENT

49.     All conditions precedent to EasyKnock's claims for relief have been performed or have occurred.

## JURY DEMAND

50.     EasyKnock requests a jury trial on all claims.

## PRAYER FOR RELIEF

For these reasons, EasyKnock respectfully requests the Court issue a temporary restraining order without notice to Defendants, forcing them to retract and remove specific defamatory statements from their website and restraining them from tortiously interfering with EK Real Estate's contractual and business relationships.

EasyKnock further requests that Defendants be notified of a hearing on this application for a preliminary injunction, and, following such hearing, that the Court issue a preliminary injunction against Defendants, forcing them to retract and remove specific defamatory statements from their website and restraining them from tortiously interfering with EK Real Estate's contractual and business relationships.

EasyKnock further requests that, following final hearing, the Court issue a permanent injunction against Defendants, forcing them to retract and remove specific defamatory statements from their website and restraining them from tortiously interfering with EK Real Estate's contractual and business relationships.

EasyKnock further requests that, following final hearing, the Court enter judgment in Plaintiffs' favor against Defendants for actual damages, special and consequential damages, injunctive relief, as specified above, reasonable attorneys' fees and expenses for pre-trial, trial, and any subsequent appeal and petitions for review, pre-

and post-judgment interest at the maximum rate allowed by Texas law, all costs of suit,

and all such other and further relief, at law and in equity, to which EasyKnock may be

entitled.

Respectfully submitted,

By: /s/ *Christopher B. Trowbridge*_____
Christopher B. Trowbridge
Attorney-in-charge
Texas Bar No. 24008182
ctrowbridge@bellnunnally.com
Kristopher D. Hill
Texas Bar No. 24066674
khill@bellnunnally.com
Scott R. Larson
Texas Bar No. 24097971
slarson@bellnunnally.com

**BELL NUNNALLY & MARTIN LLP**
2323 Ross Ave., Suite 1900
Dallas, TX 75201
(214) 740-1400
(214) 740-1499 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATION OF COUNSEL

The undersigned certifies that Plaintiffs attempted to give notice to Defendants of Plaintiffs' Application for a Temporary Restraining Order via email at 10:20 a.m. and via telephone call at 10:45 a.m. on November 8, 2021, but was unable to reach Defendants. Shortly thereafter, I received a call from Charles Babcock of the law firm Jackson Walker LLP, who stated Defendants retained him as counsel in this matter. I forwarded Mr. Babcock a copy of the Complaint. Accordingly, Defendants have notice of Plaintiffs' Application for Temporary Restraining Order.

I conferred at 2:30 p.m. on November 8, 2021, with Charles Babcock and John Edwards, also of Jackson Walker LLP, when we discussed the substance of the relief requested. No agreement could be reached.

/s/ *Christopher B. Trowbridge*
Christopher B. Trowbridge
Attorney-in-Charge for Plaintiffs

6233047_1.docx