UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EASYKNOCK, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:21-CV-03669 |
| FELDMAN & FELDMAN, P.C., *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the application for temporary restraining order filed by Plaintiffs Easy Knock, Inc. and EK Real Estate Services of New York, LLC (collectively "Easy Knock"). (Dkt. 1). After carefully reviewing the application, response, replies, all attachments and the applicable law, the Court finds that the application should be **DENIED.** Easy Knock's request for expedited discovery (Dkt. 37) is **DENIED**.

**I.   Background**

Easy Knock operates an alleged "sale-leaseback" business whereby Texas homeowners deed their homesteads over to Easy Knock in exchange for payment of a percentage of the appraised value of their home, the entry of an agreement to lease back the homestead property, and an option to buy back the entire deed to their homes. Defendant Feldman & Feldman P.C., a law firm, posted eight statements on its website discussing Easy Knock's business practices of alleged predatory pricing. (Dkt. 1 at 7-9).

Easy Knock has now sued Defendants Feldman & Feldman P.C. and certain of its attorneys (collectively "Feldman & Feldman") under Texas law for defamation and tortious interference. In support of these claims, Easy Knock alleges that the website's statements are defamatory and that Feldman & Feldman have unlawfully interfered with Easy Knock's contracts with its customers. Prior to an adjudication that the statements are in fact defamatory or otherwise unlawful, Easy Knock has applied to the Court for injunctive relief in the form of a temporary restraining order against Feldman & Feldman. In the application Easy Knock seeks an order "restraining [Feldman & Feldman] from tortiously interfering with [Easy Knock's] contractual and business relationships" and "forcing them to retract and remove specific defamatory statements from their website." The Court considers this application below.

## II. Legal Standard

Courts have discretion to grant or deny a temporary restraining order. *Clark v. Pritchard*, 812 F.2d 991, 993 (5th Cir. 1987) (holding that the standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction); *DSC Comm'cns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996). This discretion is not unbounded, and courts may issue such an order if the movant demonstrates: (1) a substantial likelihood the movant will prevail on the merits of its claim; (2) a substantial threat of irreparable injury to the movant if the injunction does not issue; (3) that the threatened injury to the party outweighs the threatened harm to enjoined parties if the court issues the injunction; and (4) issuance of the injunction will not disserve the

public interest. *Id.* A temporary restraining order is an extraordinary and drastic remedy that should not be issued unless the movant clearly carries the burden of persuasion. *Id.* Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; and shall describe in reasonable detail the act or acts restrained or required. Fed. R. Civ. P. 65(d).

### III. Analysis

#### A. Injunctive Relief Would Violate Feldman & Feldman's Constitutional Right of Free Speech

As an initial matter, the parties disagree regarding the remedy that Easy Knock seeks in its request for injunctive relief. Feldman & Feldman asserts that, when the complaint is viewed as a whole, Easy Knock seeks an order preventing the law firm from making future defamatory statements about Easy Knock on its website. On the other hand, Easy Knock asserts that it is *only* seeking an order requiring the law firm to retract the statements it has already made on the website, not prohibit future identical statements.[1] Here, regardless of which party is correct, neither remedy is available to Easy Knock. An order granting injunctive relief with respect to Easy Knock's defamation claim would violate Feldman & Feldman's right of free speech guaranteed by the Texas Constitution.[2]

---

[1] Both arguments find some support in the plain language of the complaint.
[2] The Texas Supreme Court has interpreted Texas's constitutional right to free speech more broadly than its federal equivalent. *Davenport v. Garcia*, 834 S.W.2d 4, 8-9 (Tex. 1992). Because the defamation claims in this case were brought under Texas law and Feldman & Feldman have asserted their free speech rights under Article I, § 8 of the Texas constitution, the Court will analyze the merits of Feldman & Feldman's freedom of speech arguments under Texas law."

## B. The Texas Constitution Protects Alleged Defamatory Statements

When injunctive relief is sought as to alleged defamation, constitutional free speech protections must be considered. *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983). Under the Texas Constitution, "[e]very person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." TEX. CONST. art. I, § 8. Enshrined in Texas law since 1836, this fundamental right recognizes the "transcendent importance of such freedom to the search for truth, the maintenance of democratic institutions, and the happiness of individual men." TEX. CONST. art. I, § 8 interp. commentary (West 2007). As the Texas Supreme Court has noted "[t]he traditional rule of Anglo-American law is that equity has no jurisdiction to enjoin defamation." *Kinney v. Barnes*, 443 S.W.3d 87, 90 (Tex. 2014). "Defamation alone is not a sufficient justification for restraining an individual's right to speak freely" *Hajek*, 647 S.W.2d at 255. The Texas Supreme Court has explained this concept:

> [T]here can be no justification for the utterance of a slander. It cannot be too strongly condemned. The law makes it a crime. But there is no power in courts to make one person speak only well of another. The Constitution leaves him free to speak well or ill; and if he wrongs another by abusing this privilege, he is responsible in damages or punishable by the criminal law.
> *Ex parte Tucker*, 110 Tex. 335, 220 S. W. 75, 76 (Tex. 1920).

"Texas allows the recovery of damages for defamatory speech, but there is a right to speak defamatory words, nonetheless." *Heritage Pac. Fin., LLC v. Shelton Investigations, LLC*, 2009 U.S. Dist. LEXIS 115887 (E.D. Tex., Dec. 14, 2009); *see also Tucker*, 220 S. W. at 76.

A judicial order forbidding future statements before they occur constitutes a prior restraint on speech and Texas courts have long held that such orders are presumed to violate the Texas Constitution. *See Kinney*, 443 S.W.3d at 90. Likewise, prior to an adjudication that the statements are defamatory or otherwise unlawful, a judicial order requiring the retraction or removal of the statements from a website is also presumed to violate the Texas Constitution. *See Landry's Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 66-67 (Tex. App.—Houston [14th Dist.] 2018), *rev'd in part on other grounds*, 631 S.W.3d 40 (Tex. 2021) (court noting that both types of orders raise identical constitutional concerns).[3] As Texas courts have held,

> It has never been the theory of free institutions that the citizen could say only what courts or legislatures might license him to say, or that his sentiments on any subject or concerning any person should be supervised before he could utter them. Nothing could be more odious, more violative or destructive of freedom, than a system of only licensed speech or licensed printing.

*Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 917 (Tex. App.—Dallas 2006, no pet.). The Texas Constitution's guarantee of a person's liberty of speech "cannot co-exist with a power to compel his silence or fashion the form of his speech." *See Kinney*, 443 S.W.3d at 95 (quoting *Tucker*, 220 S.W. at 76). Courts do not have the

---

[3] In comparison, *after* an adjudication that the statements are defamatory such injunctive relief is available and does not violate the Texas Constitution. This is true because at this stage of the litigation the speech is no longer protected. *See Kinney*, 443 S.W.3d at 95. As Texas courts have explained: "If a plaintiff prevails in a defamation claim based on statements the defendant posted on the internet, the court can order the defendant to delete the defamatory matter and ask third-party republishers to do the same. This remedy is available because it constitutes the erasure of past speech that has already been found to be unprotected in the context in which it was made." *See Landry's Inc.*, 566 S.W.3d 41 at 66 (quotation marks and citation omitted) (citing *Kinney*, 443 S.W.3d at 93).

power to fashion the content of speech any more than they have the right to silence speech. *Id.*

### C. Types of Alleged Defamatory Statements That May Be Enjoined

#### 1. Written or Verbal Threats

Prior to adjudication, defamatory statements may be enjoined when the statements amount to a written or verbal threat. *See Kinney*, 443 S.W.3d at 101("[W]e have never held that all injunctions against future speech are *per se* unconstitutional, recognizing that they may be warranted to restrain speech that poses a threat of danger.") Judicial orders for injunctive relief regarding such statements do not violate the Texas Constitution's guarantee of freedom of speech. When oral or written statements assume that character, "they amount to conduct, or threatened conduct, and for that reason may properly be restrained." *Pirmantgen v. Feminelli*, 745 S.W.2d 576, 578 (Tex. App.—Corpus Christi 1988); *See also Ex parte Tucker*, 220 S.W. at 76. "It is well settled that Texas courts will not grant injunctive relief in defamation or business disparagement actions if the language enjoined evokes no threat of danger to anyone, even though the injury suffered often cannot easily be reduced to specific damages." *Heritage Pac. Fin., LLC v. Shelton Investigations, LLC*, 2009 U.S. Dist. LEXIS 115887 (E.D. Tex., Dec. 14, 2009). Publications which merely cause adverse business or social effects do not rise to the level of intimidation or coercion necessary to overcome the protection. *Pirmantgen*, 745 S.W.2d at 578. Therefore, as long as they do not threaten others, even defamatory statements are provided constitutional protection in most cases under Texas law. *Id.*

In this case Easy Knock does not argue that Feldman & Feldman's statements on its website constituted a threat or placed anyone in danger. Nor is there any evidence in the record suggesting that the statements threaten or place anyone in danger. *See id.*

### 2. Commercial Speech

Under very limited circumstances, defamatory statements may also be enjoined when they are intertwined with alleged business torts and involve "commercial speech." *Marketshare Telecom*, 198 S.W.3d at 917;[4] *see also Lawrence v. Atwood*, 295 S.W.2d 298, 300 (Tex. Civ. App.—Beaumont 1956) (breach of trust and breach of contract mentioned by court as actions that may be enjoined if intertwined with defamation). Commercial speech is an "expression related solely to the economic interests of the speaker and its audience." *Marketshare Telecom*, 198 S.W.3d at 917. While commercial speech is clearly protected by the Texas Constitution's guarantee of freedom of speech, some forms of commercial speech regulation are permissible. *See e.g. State Bd. of Med. Exam'rs v. Burzynski*, 917 S.W.2d 365, 370 (Tex. App.—Austin 1996). But the courts may only restrain commercial speech that is "false or misleading." *Marketshare Telecom*, 198

---

[4] The parties dispute whether the alleged defamatory website statements constitute commercial speech i.e. are "expression[s] related *solely* to the economic interests of the speaker and its audience." *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 917 (Tex. App.—Dallas 2006, no pet.) (emphasis added). Feldman & Feldman argues that the alleged statements are not commercial speech because they address issues of public concern: violations of the consumer protection statutes. The Court disagrees. *See Neely v. Commission for Lawyer Discipline*, 196 S.W.3d 174, 181 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (Court holding that "[w]hether speech is commercial or noncommercial in nature is a 'commonsense' determination. Specifically, lawyer advertising is commercial speech.") (citations omitted). Accordingly for purposes of its analysis, the Court will assume that the statements constitute commercial speech.

S.W.3d at 919. "Courts may take measures to prevent deception and confusion even if the speech is not inherently misleading but only potentially misleading." *Id.* at 918. That said, "misrepresentations in commercial speech can only be restrained if . . . the applicant first establishes that commercial speech that was false and misleading has actually been uttered." *Id.* at 919; *see also Tex. Mut. Ins. Co. v. Surety Bank, N.A.*, 156 S.W.3d 125, 130 (Tex. App.—Fort Worth 2005, no pet.) (declining to hold that a possible negative interpretation or impression of factually accurate words renders speech false or misleading). Here, even assuming that the statements at issue constitute commercial speech, an order granting injunctive relief would violate Feldman & Feldman's constitutional right to free speech.

First the Court must determine whether Easy Knock has established that false or misleading statements of fact have been made that justify a restraint on commercial speech. If Easy Knock cannot do so, it is not entitled to injunctive relief. *Id.* Easy Knock identifies eight statements on Feldman & Feldman's website concerning its business practices that it alleges are "false" and/or "defamatory." (Dkt. 15 at 6-8). Easy Knock asserts that these statements are false primarily because they state as "facts" that Easy Knock is a "mortgage lender," engaged in "lending" or making home loans, or that it is subject to the laws governing entities that are engaged in lending or making home loans. *Id.* Easy Knock contends that none of these "facts" are true. *Id.*

The Court finds that the alleged false statements at issue, when read in the context of the entire website passage, are more statements of legal opinions than statements of

facts. (Dkt 16, Ex 1). Such statements of opinion cannot serve as the basis for a restraint on commercial speech. *See Marketshare Telecom*, 198 S.W.3d at 919–20 (holding that statement directed to third parties that they would "clearly [be] in violation" of their contract with the defendant if they sold competitor's product was not a misrepresentation that would justify a restraint on commercial speech). Furthermore, while Easy Knock alleges that there are publicly available documents regarding its business practices and establishing that it is not a lender or subject to the laws governing lenders, none of the statements at issue can be readily discounted as false or misleading. In fact, one federal judge in this district has published an opinion that is in substantial agreement with Feldman & Feldman's legal opinions regarding Easy Knock's status as a lender and being subject to the laws governing lenders. *See* Memorandum and Opinion, *Jackson v. EK Real Estate Services of New York, L.L.C.* Dkt. 24 (No. 4:20-cv-3867). And given the fact that there are at least eight other cases currently on file where this issue is likely to be adjudicated, this number may grow. Accordingly the Court finds that (1) Easy Knock has not established that the website statements at issue are false or misleading and (2) an order granting injunctive relief would violate Feldman & Feldman's free speech protections guaranteed by the Texas Constitution. *Marketshare Telecom*, 198 S.W.3d at 919.

### D. Easy Knock Has Not Carried Its Burden on the Required Elements for Injunctive Relief.

The Court finds that, in light of the findings above, Easy Knock has not met its burden of establishing that it has a substantial likelihood of success on the merits of either its defamation or tortious interference claim. *See D Magazine Partners, L.P. v. Rosenthal*,

529 S.W.3d 429, 434 (Tex. 2017) (discussing the elements of a defamation claim under Texas law); *Dunn v. Calahan*, No. 03-05-0426-CV, 2008 Tex. App. LEXIS 9498, 2008 WL 5264886, at *3 (Tex. App.—Austin Dec. 17, 2008, pet. denied) (discussing the elements for claims for tortious interference with business relations).[5] Easy Knock has also failed to meet its burden of showing that it would suffer irreparable harm if the injunction relief did not issue.

A showing of a *possibility* of irreparable harm is not enough; the threat of irreparable harm must be *likely. Winter v. Nat'l Res. Def. Council, Inc.*, 129 S. Ct. 365, 375 (2008). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Here, Easy Knock has made conclusory allegations regarding irreparable harm: "The *potential* losses of customers, goodwill, and business disruptions and the toll on Easy Knock's reputation, which will *inevitably* occur if Defendants are not enjoined, will irreparably injure Easy Knock such that the injury cannot be measured in monetary terms." (Dkt. 1 at ¶ 41 (emphasis added)). Easy Knock does not establish why such irreparable damages are likely rather than a mere possibility or why the damages cannot be measured.

---

[5] It is not clear from the pleadings if Easy Knock also seeks injunctive relief regarding its tortious interference claim or how the factual basis of this claim is any different from the allegations supporting its defamation claim. Nevertheless, the Court's findings also support a finding there is not a substantial likelihood that Easy Knock will be able to establish at trial that the statements at issue were (1) an independently tortious or wrongful act by Feldman & Feldman that prevented a business relationship from occurring or (2) constituted a willful and intentional act of interference with a business relationship. These are essential elements of clams for tortious interference with prospective business relationships and for tortious interference with existing business relationships, respectively. *See Dunn v. Calahan*, No. 03-05-0426-CV, 2008 Tex. App. LEXIS 9498, 2008 WL 5264886, at *3 (Tex. App.—Austin Dec. 17, 2008).

(Dkt. 15, Appendix); *see, e.g., Sun Water Systems, Inc. v. Vitasalus, Inc.*, 2007 U.S. Dist. LEXIS 16622, 2007 WL 820280, *6 (N.D. Tex. Mar. 8, 2007) (holding that the loss of goodwill of a business "is usually compensable in money damages" and "a total failure of proof as to why money damages are not measurable or adequate cannot be excused") "Simply arguing that a company is losing customers and goodwill without showing that monetary damages are an inadequate remedy is insufficient to establish irreparable harm." *Johnson Controls, Inc. v. Guidry*, 724 F. Supp. 2d 612, 620 (W.D. La. 2010).

Easy Knock has failed to meet its burden of showing that its threatened injury outweighs the harm to Feldman & Feldman by granting injunctive relief. As noted above, the requested injunction would deprive Feldman & Feldman of its constitutional right to free speech. As shown through the extensive Texas caselaw cited above, the potential threat of harm to Easy Knock pales in comparison to the deprivation of a constitutional right that has been zealously protected by Texas courts since the founding of the state. Finally, granting injunctive relief against Feldman & Feldman would undermine a very important public interest: the vigorous protection of the robust right to freedom of speech as guaranteed by the Texas Constitution. Accordingly Easy Knock has not made a showing sufficient to justify the extraordinary relief it seeks, and the application should be **DENIED**.

### IV. Conclusion

The Court finds that the requested injunctive relief would violate Feldman & Feldman's constitutional rights to free speech and Easy Knock has not met its burden of establishing each of the requisite elements for the issuance of a temporary restraining order. Accordingly, the application for temporary restraining order (Dkt. 1) is **DENIED**. Easy Knock's request for expedited discovery (Dkt. 37) is **DENIED**.

SIGNED at Houston, Texas this 27th day of January 2022.

George C. Hanks, Jr
United States District Judge